UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | **EDCV 26-00963-KK-DFMx** | | Date: | March 16, 2026 |
| Title: | ***Hung T. Nguyen v. Kristi Noem et al.*** | | | |

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **(In Chambers) Order GRANTING Petitioner's Motion for Preliminary
Injunction [Dkt. 3]**

## I.
## INTRODUCTION

On February 27, 2026, petitioner Hung T. Nguyen ("Petitioner"), who is currently detained
in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of
Habeas Corpus ("Petition") against respondents Kristi Noem, Pamela Bondi, Thomas Giles, James
Pilkington, and Warden Geo Group ("Respondents").  ECF Docket No. ("Dkt.") 1, Petition
("Pet.").  On the same day, Petitioner filed an Application for a Temporary Restraining Order,
which the Court converted to the instant Motion for Preliminary Injunction ("Motion").  Dkt. 3,
Motion ("Mot.").  The Court finds this matter appropriate for resolution without oral argument.  See
Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Petitioner's Motion is
**GRANTED**.

## II.
## BACKGROUND

### A.    RELEVANT FACTS

In 1981, Petitioner was born in a refugee camp in Thailand to refugees from Vietnam.  Dkt.
10-1, Declaration of Hung T. Nguyen ("Nguyen Decl.") ¶ 3.  Two weeks after his birth, Petitioner
and his parents immigrated to the United States and subsequently became Lawful Permanent
Residents.  Id. ¶¶ 3, 11.  Because of the circumstances of his birth, Petitioner does not have a birth
certificate or other document identifying his nationality from either Vietnam or Thailand.  Id. ¶ 11.

In 2012, Petitioner pleaded guilty to a charge of making criminal threats in California state court stemming from an altercation with his father.  Id. ¶ 4; Dkt. 12-1, Declaration of Lourdes Palacios ("Palacios Decl.") ¶ 9.  Petitioner's defense counsel at the time failed to inform him of the immigration-related consequences of his plea.  Nguyen Decl. ¶ 4.  Petitioner now plans to move to vacate the conviction.[1]  Id.

On August 28, 2013, Petitioner received a final order of removal.  Id. ¶ 5.  After being detained by immigration officials for about 100 days, Petitioner was released on an order of supervision ("OSUP") because he could not be removed.  Id.  In 2018, Petitioner misread his OSUP and accidentally missed a required check-in appointment with immigration officials.  Id. ¶ 6.  Petitioner was again detained in immigration custody for about 100 days before being released and placed on a second OSUP.  Id.

Since his most recent release in 2018, Petitioner alleges he has fully complied with his second OSUP and attended all required check-ins.  Id. ¶ 7.  During this time, Petitioner worked full time at a mechanic shop and contributed to his family by, among other things, driving his parents to doctor's appointments.  Id. ¶ 13.  The rest of his immediate family – including his mother, father, two sisters, and brother – are all U.S. citizens.  Id.

On October 17, 2025, ICE re-detained Petitioner when he arrived for a regularly scheduled check-in.  Id. ¶ 8.  Upon his re-detention, ICE provided Petitioner a Notice of Revocation of Release ("Notice") informing him he was being detained pursuant to 8 C.F.R. § 241.4 and stating it determined Petitioner "will be kept in the custody of [ICE] at this time . . . based on a review of [his] immigration and criminal history."  Dkt. 12-2, Notice.  However, ICE did not tell Petitioner his removal was more likely now than before or provide Petitioner an informal interview to challenge his re-detention.  Nguyen Decl. ¶ 9.  Further, while ICE has attempted to remove Petitioner to Vietnam, the Vietnamese government has not responded to ICE's request for travel documents.  Id. ¶ 10; Palacios Decl. ¶ 8.

Petitioner's detention has caused significant harm to him and his family.  Nguyen Decl. ¶ 13.  Specifically, since his re-detention, Petitioner has lost his job and has not been able to support his family.  Id.

## B.   PROCEDURAL HISTORY

On February 27, 2026, Petitioner filed the operative Petitioner against Respondents, raising the following grounds for relief:

1.   **Ground One:**  Unlawful Detention in violation of Zadvydas v. Davis, 533 U.S. 678 (2001) ("Zadvydas Claim");

2.   **Ground Two:**  Unlawful Re-Detention in violation of the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act's ("INA") implementing regulations ("Re-Detention Claim"); and

---

[1] Respondents further contend Petitioner was convicted of violating a court order in February 2013 and violating a protective order in October 2023.  Palacios Decl. ¶¶ 10-11.

**3.**        **Grounds Three and Four:**  Unlawful Potential Removal to a Third Country in violation of the Due Process Clause ("Third Country Removal Claims").

Pet. at 6-7.

On the same day, Petitioner filed the Application, seeking his immediate release from immigration custody.  Dkt. 3.

On March 2, 2026, the Court referred this case to the Office of the Federal Public Defender for the Central District of California ("FPD") for consideration of appointment of counsel pursuant to 18 U.S.C. § 3006A(a)(2).  Dkt. 6.

On the same day, Respondents filed a Response to Petitioner's Application, requesting "that the [Application] not be denied outright at this juncture . . . , but rather converted to a [preliminary injunction] motion with a set briefing schedule."  Dkt. 7.

On March 10, 2026, the FPD accepted appointment of counsel for Petitioner and appeared in this matter.  Dkt. 8.  On the same day, the Court converted Petitioner's Application into the instant Motion and set an expedited briefing schedule.  Dkt. 9.

On March 12, 2026, Petitioner filed a Supplemental Brief in support of a preliminary injunction.  Dkt. 10, Supplemental Brief.  In support of the Supplemental Brief, Petitioner submits his declaration.  Nguyen Decl.

On March 13, 2026, Respondents filed a Supplemental Opposition.  Dkt. 12, Supplemental Opposition ("Supp. Opp.").  In support of the Supplemental Opposition, Respondents submit a declaration from Deportation Officer Lourdes Palacios.  Palacios Decl.

This matter, thus, stands submitted.

### III.
### LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Under Federal Rule of Civil Procedure 65, the Court may grant a temporary restraining order to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1).  Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors").  See id. at 20.  Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard."  Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified).  Under the serious questions standard, the four Winter elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another."

<u>All. for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011).  Thus, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other <u>Winter</u> factors are also met.  <u>Id.</u> at 1132.

**IV.**
**<u>DISCUSSION</u>**

**A.   THE COURT HAS JURISDICTION OVER PETITIONER'S CLAIMS**

As an initial matter, Respondents argue this Court lacks jurisdiction to review Petitioner's claims under 8 U.S.C. § 1252(g) ("Section 1252(g)").  Supp. Opp. at 10-11.  As discussed below, the Court rejects this argument and finds it has jurisdiction to review Petitioner's claims.

**1.   Applicable Law**

Section 1252(g) provides "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]."  8 U.S.C. § 1252(g).  Section 1252(g) is a "discretion-protecting provision," <u>Reno v. Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 487 (1999), that is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion," <u>id.</u> at 485 n.9.  The Supreme Court has held Section 1252(g) should be read narrowly to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '<u>commence</u> proceedings, <u>adjudicate</u> cases, or <u>execute</u> removal orders.'"  <u>Id.</u> at 482 (emphasis in original).  In doing so, the Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."  <u>Id.</u>

Accordingly, Section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General."  <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 294 (2018).  Consistent with this narrow interpretation of Section 1252(g), the Ninth Circuit has held courts retain jurisdiction "to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority.'"  <u>Ibarra-Perez v. United States</u>, 154 F.4th 989, 996 (9th Cir. 2025) (quoting <u>United States v. Hovsepian</u>, 359 F.3d 1144, 1155 (9th Cir. 2004)).

**2.   Analysis**

Here, Petitioner does not challenge his final order of removal or ICE's discretionary authority to execute that order.  Instead, Petitioner raises questions of law as to whether his re-detention is authorized by the INA and Due Process Clause and whether his potential removal to a third country without notice and an opportunity to be heard violates the Due Process Clause.  Pet. at 6-7.  Such claims "constitute 'general collateral challenges to unconstitutional practices and policies used by the agency,'" <u>Walters v. Reno</u>, 145 F.3d 1032 (9th Cir. 1998) (quoting <u>McNary v. Haitian Refugee Ctr., Inc.</u>, 498 U.S. 479, 492 (1991)), rather than challenges to "ICE's discretionary authority to decide 'when' or 'whether' to execute a removal order," <u>Ibarra-Perez</u>, 154 F.4th at 997.  <u>See also</u> <u>Constantinovici v. Bondi</u>, 806 F. Supp. 3d 1155, 1161-62 (S.D. Cal. 2025) (rejecting a similar jurisdictional argument by the government).  Accordingly, the Court finds Section 1252(g) does not present a jurisdictional bar to Petitioner's claims.

---

**B.      THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER**

**1.      Likelihood of Success on the Merits**

The likelihood of success on the merits is the most important <u>Winter</u> factor, which "is especially true for constitutional claims." <u>Junior Sports Mags. Inc. v. Bonta</u>, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing <u>Melendres v. Arpaio</u>, 695 F.3d 990, 1002 (9th Cir. 2012)).  Here, the Court finds Petitioner is likely to succeed on the merits or has at least raised "serious questions" regarding the merits of his <u>Zadvydas</u> and Re-Detention Claims.[2]

**a.      <u>Zadvydas</u> Claim**

**i.      Applicable Law**

Under 8 U.S.C. § 1231(a) ("Section 1231(a)"), a noncitizen who has been ordered removed must be detained during the 90-day removal period.  8 U.S.C. § 1231(a)(1)(A), (2)(A).  After the 90-day removal period, "the Government 'may' continue to detain a[] [noncitizen] who still remains here or release that [noncitizen] under supervision." <u>Zadvydas</u>, 533 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(6) ("Section 1231(a)(6)")).  However, Section 1231(a)(6) includes an implicit limit on "a[] [noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." <u>Id.</u> at 689.  Recognizing constitutional concerns raised by such prolonged detention, the Supreme Court observed "Congress previously doubted the constitutionality of detention for more than six months," and, therefore, "for the sake of uniform administration in the federal courts," established a presumptively reasonable six-month period for post-removal-order detention.  <u>Id.</u> at 701.

After the six-month period, if a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." <u>Id.</u>  However, a noncitizen still "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Id.</u>  Importantly, "as the period of prior postremoval

---

[2] With respect to Petitioner's Third Country Removal Claims, there is insufficient evidence before the Court showing Respondents seek to remove Petitioner to a third country.  Respondents represent ICE intends to remove Petitioner to Vietnam.  <u>See generally</u> Supp. Opp.  Petitioner does not present evidence to the contrary, such as statements by ICE officials suggesting they are considering removal to a third country.  <u>See, e.g.</u>, <u>Delkash v. Noem</u>, No. EDCV 25-01675-HDV-AGRx, 2025 WL 2683988, at *2 (C.D. Cal. Aug. 28, 2025) (stating ICE officers told the petitioner they planned to remove him to South Sudan); <u>Nadari v. Bondi</u>, No. CV 25-07893-JLS-BFMx, 2025 WL 2934514, at *3 (C.D. Cal. Sep. 3, 2025) (stating an ICE official informed the petitioner's counsel that an officer would decide where the petitioner would be removed).  Hence, without evidence of his potential removal to a third country, Petitioner fails to demonstrate a likelihood of success on the merits of his Third Country Removal Claims at this time.  Accordingly, Petitioner's request for injunctive relief as to his Third Country Removal Claims is **DENIED** without prejudice.  Nonetheless, the Court recognizes Petitioner's fears concerning third country removal, and Petitioner may present his claim in a renewed application or motion if he obtains supporting evidence.

---

confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

### ii.    Analysis

Here, Petitioner is likely to succeed on his claim that his continued detention pursuant to Section 1231(a)(6) is unlawful. As an initial matter, Petitioner has been detained for nearly a year since his order of removal became final, including his previous confinement in 2013 and 2018. See Nguyen v. Scott, 796 F. Supp. 3d 703, 721 (W.D. Wash. 2025) (finding the clock for calculating the presumptively reasonable six-month period under Zadvydas did not restart with each nonconsecutive detention); Phan v. Warden of Otay Mesa Det. Facility, No. 25-cv-02369-AJB-BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (collecting cases finding the same). Thus, Petitioner's detention is no longer "presumptively reasonable," Zadvydas, 533 U.S. at 701, and grows "more presumptively unreasonable" every day he remains in custody, Vaskanyan v. Janecka, No. EDCV 25-01475-MRA-ASx, 2025 WL 3050081, at *5 (C.D. Cal. July 18, 2025).

Additionally, Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Despite the prolonged length of Petitioner's detention, two previous failed attempts to remove Petitioner from the United States, and the fact Petitioner's order of removal became final over 12 years ago, ICE has not been able to effectuate Petitioner's removal from the country. See, e.g., Ton v. Noem, No. EDCV 25-3348-DMG-DSRx, 2025 WL 4058327, at *5 (C.D. Cal. Dec. 22, 2025) (finding no significant likelihood of removal where, among other things, more than two decades had passed since the petitioner's order of removal became final). Moreover, Respondents concede they have not yet obtained travel documents from Vietnam. Palacios Decl. ¶ 8; see also Abkarian v. Warden, No. EDCV 25-03584-ODW-AGRx, 2026 WL 127941, at *3 (C.D. Cal. Jan. 12, 2026) ("Courts considering this inquiry have generally focused on whether a petitioner has received, or will receive, travel documents that would make the petitioner's removal possible."). Finally, Petitioner lacks documentation from either Vietnam or Thailand regarding his nationality, further suggesting the Government will not be able to remove him to Vietnam in the reasonably foreseeable future.

Respondents maintain Petitioner's removal is significantly likely in the reasonably foreseeable future because ICE has requested a travel document from Vietnam and "pre-1995 Vietnamese immigrants are now routinely removed to Vietnam." Supp. Opp. at 5. In support of this contention, Petitioner cites three instances where Vietnamese nationals have been removed to Vietnam. Id. This argument is unpersuasive. As Respondents concede, the request for travel documents is "still pending," and Respondents provide no indication of when, if at all, the Vietnamese government will respond to the request, let alone issue travel documents for Petitioner. Palacios Decl. ¶ 8; see Quan v. Bowen, No. EDCV 25-02546-HDV-PVCx, 2025 WL 3691858, at *5 (C.D. Cal. Nov. 14, 2025) (finding a mere request for travel documents from Vietnam was "plainly insufficient to rebut Petitioner's showing that it is unlikely he will be removed in the reasonably foreseeable future").

Moreover, ICE's ability to remove three other individuals to Vietnam "is not persuasive to show that [Petitioner] himself faces a 'significant likelihood of removal in the reasonably foreseeable future.'" Luu v. Bowen, No. EDCV 25-03145-MEMF-SPx, 2025 WL 3552298, at *7 (C.D. Cal. Dec. 11, 2025) (emphasis added); accord Nguyen v. Noem, No. SACV 25-02654-HDV-DSRx, 2025 WL 3898489, at *4 (C.D. Cal. Dec. 19, 2025) (rejecting the same argument as presenting merely

"anecdotal evidence" of removal).  Importantly, "the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted."  Nguyen, 796 F. Supp. 3d at 723.  Notably, Respondents concede Petitioner's birth in a Thai refugee camp is "a significant complicating factor" making it "appreciably more difficult to remove Petitioner than it would be to remove a normal Vietnamese citizen who had immigrated to the United States prior to 1995."  Resp. at 2.  Therefore, Respondents' "generalizations regarding the likelihood that removal will occur" fail to rebut Petitioner's showing of no significant likelihood of his removal in the reasonably foreseeable future.  Nguyen, 796 F. Supp. 3d at 725

For these reasons, the Court finds Petitioner has sufficiently established there is no significant likelihood of removal in the foreseeable future such that his detention is no longer authorized under Section 1231(a)(6).  Hence, Petitioner has demonstrated a strong likelihood of success on his Zadvydas Claim.

### b.    Re-Detention Claim

### i.    Applicable Law

"The legal proposition that agencies may be required to abide by certain internal policies is well-established."  Alcaraz v. I.N.S., 384 F.3d 1150, 1162 (9th Cir. 2004).  Under Section 1231(a), a noncitizen who is not removed within the 90-day removal period must be released "subject to supervision under regulations prescribed by the Attorney General."  Id. § 1231(a)(3).  While certain noncitizens may be detained beyond the 90-day removal period, such noncitizens, if released, must be subject to the same terms of supervision as under Section 1231(a)(3).  Id. § 1231(a)(6).

8 C.F.R. § 241.4 ("Section 241.4") and 8 C.F.R. § 241.13 ("Section 241.13") set the terms of supervised release under Sections 1231(a)(3) and 1231(a)(6), including the conditions and procedures under which ICE may revoke release.[3]  8 C.F.R. §§ 241.4(l), 241.13(i).  First, ICE may revoke release when a noncitizen violates a condition of their OSUP.  Id. §§ 241.4(l)(1), 241.13(i)(1).  Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  Id. § 241.13(i)(2).  Third, certain officials may exercise their discretion to revoke the release.  Id. § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention."  Id. § 241.4(d).  Additionally, the noncitizen must be "notified of the reasons for revocation" and afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification," id. §§ 241.13(i)(3), 241.4(l)(1).

---

[3] Section 241.4 establishes conditions and procedures for the continued detention of noncitizens beyond the statutory 90-day removal period under Section 1231(a)(6).  See 8 C.F.R. § 241.4(a).  In comparison, Section 241.13 establishes special procedures for noncitizens "who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 . . . where the [noncitizen] has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future."  Id. § 241.13(a).

a.      Analysis

Here, Petitioner is likely to succeed on his claim that ICE violated the INA's implementing regulations in re-detaining him.  First, while Petitioner was provided the Notice upon the revocation of his release, the Notice fails to "set forth the reasons for the continued detention," 8 C.F.R. § 241.4(d), or notify Petitioner "of the reasons for revocation," id. §§ 241.13(i)(3), 241.4(l)(1). Rather, the Notice merely states the decision to revoke Petitioner's release was made "based on a review of [his] immigration and criminal history."  Notice at 1.  The Court finds this bareboned Notice plainly fails to comply with the INA's implementing regulations.  See Sun v. Noem, No. 3:25-cv-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sep. 30, 2025) ("A pro forma notice that gives no information on why release is being revoked . . . is insufficient."); Esmail v. Noem, No. CV-25-08325-WLH-RAOx, 2025 WL 3030590, at *5 (C.D. Cal. Sep. 12, 2025) (finding a similar notice was "plainly insufficient to convey to Petitioner the grounds for revocation").

Second, it is undisputed Petitioner has not received an informal interview or other opportunity to challenge his re-detention, as required by the INA's implementing regulations. Importantly, even if Petitioner was granted an informal interview, ICE failed to provide adequate notice of the grounds for his re-detention and, therefore, "thwart[ed]" his ability to challenge his re-detention.  Santamaria Orellana v. Baker, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).  Thus, ICE denied Petitioner a meaningful "opportunity to respond to the reasons for revocation."  8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1); see also Tran v. Noem, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27, 2025) ("In the stressful context of an [] arrest and revocation of release, in order to give effectual notice of the reasons for renewed detention, due process requires written notice so that the [noncitizen] can prepare for the post deprivation informal interview.").  The Court therefore finds ICE also violated the INA's implementing regulations in re-detaining Petitioner without providing him any opportunity, let alone a meaningful one, to contest the revocation of his release.  See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (collecting cases in which courts find the petitioner's re-detention unlawful because ICE failed to provide the required interview).

Respondents maintain ICE complied with the relevant regulations because the Notice "notif[ied] him of changed circumstances in his case, including that he can be expeditiously removed from the United States pursuant to the outstanding order of removal."  Supp. Opp. at 6.  However, Respondents misrepresent the record, as the Notice makes no mention of either "changed circumstances" or Petitioner's "expeditious[] remov[al]."  See generally Notice.  Thus, it does not appear ICE considered any alleged "changed circumstances" or the likelihood of Petitioner's removal when revoking Petitioner's release.  Respondents' representation to the contrary is, to use their words, "nonsense on its face."  Supp. Opp. at 8.

To the extent Respondents now contend Petitioner's removal is now significantly likely, "this post-hoc rationalization cannot form the basis of 'changed circumstances' for the purpose of re-detention."  Arostegui-Campo v. Noem, No. 25-CV-3064 JLS (MMP), 2025 WL 3280886, at *4 (S.D. Cal. Nov. 25, 2025) (collecting cases).  Regardless, "ICE's own regulations [] place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future."  Sun, 2025 WL 2800037, at *2.  As discussed above, Petitioner has sufficiently established his removal to Vietnam is not significantly likely in the reasonably foreseeable future given, among other things, the prolonged length of his detention, ICE's previous failure to remove

him, and his lack of birth or nationality documentation.  Respondents fail to rebut Petitioner's showing or "show why obtaining a travel document is more likely this time around."  Hoac, 2025 WL 1993771, at *4.  Thus, even assuming ICE considered "changed circumstances" in revoking Petitioner's release, the Court finds Respondents have not met their burden of demonstrating a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Finally, Respondents maintain "the government has very broad authority to revoke supervised release that it has granted."  Supp. Opp. at 7.  In support of this argument, Respondents cite Section 241.4, which grants certain officials broad discretion over revocation.  Id.; see 8 C.F.R. § 241.4(l)(2).  The Court is unpersuaded by this argument.  As an initial matter, Section 241.4 permits only the Executive Associate Commissioner or district director to revoke Petitioner's release on a discretionary basis.  8 C.F.R. § 241.4(l)(2).  Here, Respondents do not specify who made the decision to revoke Petitioner's release.  Therefore, to the extent Petitioner's revocation was a discretionary act pursuant to Section 241.4, Respondents do not establish the decision was issued by a properly authorized official.  See, e.g., Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 159-62 (W.D.N.Y. 2025) (finding a delegation of authority to revoke release was unlawful).  Moreover, regardless of the scope of ICE's discretionary authority, Section 241.4 still requires ICE to provide Petitioner notice and an interview.  See Rodriguez v. Hayes, 591 F.3d 1105, 1117 (9th Cir. 2010) (explaining Section 241.4 "provides the detainee some opportunity to respond to the reasons for revocation"); see also Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").  Respondents offer no authority to suggest ICE may simply ignore Section 241.4's procedural safeguards in discretionary revocations.

For these reasons, the Court finds Petitioner has sufficiently established ICE violated the INA's implementing regulations in revoking his release.  Hence, Petitioner has demonstrated a strong likelihood of success on his Re-Detention Claim.

Accordingly, because Petitioner is likely to succeed on the merits of his Zadvydas and Re-Detention Claims, the first and most important Winter factor weighs in favor of him.

## C.    LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting Melendres, 695 F.3d at 1002).  "Deprivation of physical liberty by detention constitutes irreparable harm."  Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994).  Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees.  Hernandez, 872 F.3d at 995.  "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis."  Id.

Here, Petitioner's release has been improperly revoked, and Petitioner has been unlawfully detained for five months.  While re-detained by ICE, Petitioner has lost his full-time job and not been able to support his family.  Nguyen Decl. ¶ 13.  Hence, Petitioner and his family are – and will continue to be – irreparably harmed absent relief from this Court.

Accordingly, the second Winter factor weighs in favor of Petitioner.

## D.    BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two <u>Winter</u> factors "merge when the Government is the opposing party." <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009).  The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." <u>Galvez v. Jaddou</u>, 52 F.4th 821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA).

Here, because Petitioner has demonstrated a likelihood of success on his claims, the balance of equities and public interest "tip[] sharply" in his favor.  <u>All. for the Wild Rockies</u>, 632 F.3d at 1135.  Moreover, Respondents' interest in enforcing immigration laws is not compelling because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." <u>Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.</u>, 594 U.S. 758, 766 (2021) (citing <u>Youngstown Sheet & Tube Co. v. Sawyer</u>, 343 U.S. 579, 582, 585-86 (1952)); <u>see also</u> <u>Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.</u>, 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), <u>appeal dismissed</u>, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting <u>League of Women Voters of U.S. v. Newby</u>, 838 F.3d 1, 12 (D.C. Cir. 2016))).  Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." <u>Hernandez</u>, 872 F.3d at 996.

Accordingly, the third and fourth <u>Winter</u> factors weigh in favor of Petitioner.

\*    \*    \*

Thus, because all four <u>Winter</u> factors weigh in favor of Petitioner, Petitioner is entitled to injunctive relief in the form of immediate release from immigration custody.  While Respondents maintain Petitioner is not entitled to release from custody, the Court rejects this argument.  As discussed above, Petitioner continues to suffer irreparable harm so long as he remains unlawfully re-detained.  Further, Petitioner's release is necessary to return him to the status quo, which is "the last uncontested status which preceded the pending controversy." <u>Flathead-Lolo-Bitterroot Citizen Task Force v. Montana</u>, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1210 (9th Cir. 2000)).  In this case, the last uncontested status is Petitioner's release on supervision before his current re-detention.  <u>See</u> <u>Domingo-Ros v. Archambeault</u>, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at \*2 (S.D. Cal. May 18, 2025) ("Petitioners seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation—their physical presence in the United States free from detention.").  Accordingly, Petitioner's release from custody is the appropriate remedy.  <u>See</u> <u>Esmail</u>, 2025 WL 3030590, at \*6 ("Providing Petitioner an interview <u>ex post</u> facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").

///

///

///

---

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.      Petitioner's Motion is **GRANTED**;[4]
2.      Respondents are **ORDERED** to immediately release Petitioner from their custody under the same conditions as his most recent OSUP prior to his re-detention and to return his belongings;
3.      Respondents are **ENJOINED** from re-detaining Petitioner without timely following the procedures required under Sections 241.13 and 241.4; and
4.      Respondents are **ORDERED** to file a status report no later than March 18, 2026, regarding their compliance with this Order.

This Order shall remain in effect until further order by the Court.  Failure to comply with this Order will result in sanctions.  Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the Magistrate Judge.

**IT IS SO ORDERED**.

---

[4] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'"  Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)).  Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public."  Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996).  Accordingly, the Court waives the bond requirement.